IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| VARTAN DIXON<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF SEATTLE, WASHINGTON, SEATTLE CITY LIGHT, and 3 "John Doe" employees or former employees of the City of Seattle;<br><br>        Defendants. | No. _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

COMES NOW Plaintiff and states as his causes of action:

**I.    PARTIES AND JURISDICTION**

1.1    Defendant City of Seattle is a municipality of the State of Washington and an Employer in the State of Washington. Seattle City Light, a department of the City of Seattle, is one of the nation's largest municipally owned utilities in terms of the number of customers served.

1.2    Vartan Dixon is a resident of King County Washington and has been an employee of Defendant City of Seattle in the Seattle City Light Department as a Warehouser, Machinist Specialist, Laborer, Electrical Helper, Crane Operator, Truck Driver, Heavy Equipment Operator, Constructor Apprentice, Cable Splicer apprentice, Cable Splicer and Cable Splicer Crew Chief since July 5, 1990.

-COMPLAINT                              Page | 1

1.3   Venue is proper in this action because the City of Seattle is a defendant and because the complained of hostile work environment, discriminatory and retaliatory treatment, and negligence was centered in the City of Seattle in King County, Washington.

## II.   FACTS SUPPORTING CLAIMS

2.1   Plaintiff has filed a Standard Tort Claim form with the City of Seattle and waited the Statutory Period provided by RCW 4.96.010 et seq prior to filing this matter and provided the City of Seattle with extensive additional and updating documentation on the scope and nature of his claims and damages, meeting such requirements.

2.2   Defendant has entered into a tolling agreement, tolling all statutes of limitation for an additional 221 days beyond the statutory tolling periods.

## III.   CLAIMS

3.1   Vartan Dixon became an employee of the City of Seattle on or about July 5, 1990. He was assigned to work at the City Light dam facilities in "the Skagit Project" in Newhalem and Diablo, Washington. At first he stayed in Marblemount, Washington and was transported by Seattle City Light bus to the town of Newhalem to work. He relocated from Seattle to area to Marblemount and then moved to Diablo, Washington and worked at the City of Seattle's City Light facilities in and around the town of Newhalem.

3.2   While working in the "Skagit Project" Vartan Dixon was subjected to a hostile work environment and discrimination based on his African American race and skin color. Vartan Dixon reported discrimination and the hostile harassment he experienced. His reports were corroborated by other employees. But the environment was never remedied and the Company arranged for a police escort out of the town of Newhalem. He was told by Seattle City Light and the Whatcom County Sheriff that there had been death threats and the employer "could not

-COMPLAINT                              Page | 2

guarantee his safety therefore he had to be transferred to Seattle". In Seattle, he was offered a demotion and cut in pay.

Despite his complaints and representation by an attorney and resolution of some early claims, the environment and hostility from "the Skagit Project" and that existing in the Seattle location, was never remedied and continued to create a hostile work environment and subject him to discrimination and retaliation throughout his career up to and including the present.

3.3     City of Seattle from 1990 through the present have subjected Vartan Dixon to a hostile environment of different treatment on the basis of race and color, delaying and frustrating his apprenticeships and interfering with promotional advancement, interfering with his evaluations, assignments and progression, suppressing his income, and subjecting him to extreme emotional distress, fear, indignity, humiliation and repeated threat of violence and harm.

3.4     Following Mr. Dixon's complaints, he repeatedly has also been subjected to retaliation for objecting to discrimination and reporting different treatment to the City of Seattle.

3.5     During his employment the City of Seattle has been notified that Caucasian workers including but not limited to workers who identified and related to the "Skagit Project" group have been given preferential treatment in terms and conditions of employment, inflated opportunities for compensation and appear to have been protected from consequences of misconduct

3.6     During Mr. Dixon's employment City of Seattle has received reports from Vartan Dixon and other employees about the hostile workplace and retaliation in Seattle City Light for Mr. Dixon and African American employees at least 30 times.

-COMPLAINT                                  Page | 3

3.7     The City of Seattle has failed to take prompt or sufficient corrective action to prevent or remedy the incidents or to correct the hostile incidents or the systemic hostile work environment in which Mr. Dixon and other African American employees work.

3.8     Continuing through his career and through July 2017, Mr. Dixon was subjected to hostile conduct and comments of coworkers, character assassination on the job, negative different treatment, inconsistent application of policies and procedures, adverse differences in the terms and conditions of his employment, discrimination in assignment of his crews, suppression of his income, neglect and disregard of supervision and management, and an environment of ongoing discriminatory and retaliatory events, so severe and pervasive that at most times Mr. Dixon feared for his career and/or his safety while in the workplace.

3.9     City of Seattle and Seattle City Light knew or should have known of the racially hostile and retaliatory work environment, but continued to allow Mr. Dixon and other African American employees to be subjected to indignity, fear, "second class" status, disregard, harassment and retaliation in his workplace without taking prompt or sufficient corrective action to remedy the hostile work environment. Mr. Dixon and others on his behalf consistently asked for help from the whole chain of command from supervisor to manager to Directors to Superintendent, to HR and the City Mayor.

3.10    Mr. Dixon reported coworkers who openly expressed racial hostility toward him including but not limited to statements such as if Mr. Dixon needed CPR he would not help him, if he was on fire he would not spare a glass of water and let him burn and that Mr. Dixon was "dead to him". Mr. Dixon reported that coworkers had discussed having a gun or guns in the workplace. Mr. Dixon also reported coworkers who disregarded his authority and direction as a crew chief.

3.11 In April 2017 Mr. Dixon reported that he discovered when working at his City Light Crew Chief's desk, someone had placed a shotgun shell in his desk in a way that it "jammed" a drawer such that Mr. Dixon might force or pull open the drawer and "get a message". He was subjected to fear, including fear that the shell could have potentially exploded. Mr. Dixon's supervisor was not at work. He immediately fled the workplace and took leave, and called to set up a meeting with his supervisor at the earliest possible time. Mr. Dixon provided the "shotgun shell" to the City for investigation. The City did not take action to protect Mr. Dixon, and told Mr. Dixon to return to work or to use earned leave if he didn't want to return to work. The City of Seattle did not take prompt or sufficient action in response to that extreme and serious incident and delayed responses. Director Michelle Vargo stated that she "walked through the area and didn't see or feel it was unsafe." The City of Seattle and Seattle City Light has consistently denied the racial hostility to which Mr. Dixon and others were being subjected.

3.12 These events taken together, a long term hostile work environment, ongoing retaliation, discriminatory and threatening conducts and comments, combined with management's disregard, preference for other crew chiefs, preference in assignment of crew members, preference for hostile coworkers, preference for Caucasian workers, suppression of his income compared to preferred Caucasian coworkers, and failure to take effective action to remedy the systemic hostile and retaliatory environment have harmed Mr. Dixon.

3.13 The long term cumulative effects of the environment of discrimination, retaliation, hostility and failure of management to take sufficient action, has caused Mr. Dixon to need medical and psychological care. Failure of management to remedy the environment and failure to appropriately respond to years of reports and harms has caused Mr. Dixon' to be

medically removed from the workplace, causing the end of his successful career in his prime earning years.

3.14    Individuals named as "John Doe" Defendants have deprived Mr. Dixon of his equal rights under the law to **<u>make and enforce contracts</u>** including making, performance, modification, and the enjoyment of all benefits, privileges, terms, and conditions of the employment relationship.

3.15    Individuals named as "John Doe" Defendants have deprived Mr. Dixon of liberty and property interests including his participation in public employment, his access to public areas, access to work areas and facilities, damaged his employment reputation, and deprived him of his ability to pursue his profession and craft, under "color of law."

3.15    That such actions and failures to act caused harm to Vartan Dixon in the past and with reasonable belief will continue into the future, including but not limited to distress, indignity, fear, extreme stress, loss of enjoyment of his life and career, loss of an excellent employment reputation, diminishment of past and future income caused by discrimination, retaliation and cumulative unreasonable stresses, damage to physical and mental health, loss of retirement enjoyment and security, loss of the camaraderie of his colleagues at work, loss of his freedom of movement and access to work and work locations; pain and loss of comfort day and night; humiliation and suffering, and other damages that may be found by a jury.

3.16    Despite these alleged conditions and hostility in the workplace, Mr. Dixon treated all others with dignity, respect and politeness.

Wherefore Mr. Dixon asserts all claims at law and equity which may be asserted as to or related to his employment with the City of Seattle, and seeks all damages and remedies allowed at law, including but not limited to the following:

3.16 Despite these alleged conditions and hostility in the workplace, Mr. Dixon treated all others with dignity, respect and politeness.

Wherefore Mr. Dixon asserts all claims at law and equity which may be asserted as to or related to his employment with the City of Seattle, and seeks all damages and remedies allowed at law, including but not limited to the following:

2. Violation of RCW 49.60.010 et seq, the Washington Law Against Discrimination including but not limited to claims of discrimination and retaliation.

3. Violation of 42 USC Section 1981 and Section 1983.

4. Violation of Seattle City Ordinance SMC 14.04.010. et. Seq.

5. Violation of Statutes and Common Laws of the State of Washington, including but not limited to Negligence, and Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress, and negligent failure to take action when the City knew or should have known that employment exposed Mr. Dixon and other African American employees to dangerous individuals and conditions.

6. Such other claims and remedies as the law allows.

DATED this 30 day of October, 2020, in Seattle, Washington

By: _____
Vartan Dixon
25515 137th Place SE
Kent, Washington 98042
Vartan4speedz@gmail.com
206-235-0535

COMPLAINT               Page | 7